# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHNATHAN JAMES PEREZ,       )
          Petitioner,     )
                              )
    vs.                          ) Civil Action No. 15-1554
                              ) Chief Magistrate Judge Maureen P. Kelly
NANCY GIROUX; THE ATTORNEY    )
GENERAL OF PENNSYLVANIA,       )
                              )
         Respondents.   )

## OPINION

**KELLY, Chief Magistrate Judge**

Johnathan James Perez ("Petitioner") is a state prisoner who has filed a Petition Under 28 U.S.C. § 2254 by a Person in State Custody (the "Petition"). ECF No. 4. By means of the Petition, Petitioner seeks to challenge his state court convictions for second-degree murder and robbery. For the reasons that follow, the Petition will be denied as will a Certificate of Appealability.

In April 2010, Petitioner was tried in a jury trial before the Honorable Anthony M. Mariani of the Court of Common Pleas of Allegheny County. Petitioner was a heroin addict who stabbed to death his heroin supplier and the stabbing was witnessed by several people. Petitioner was seen taking something from the pockets of the victim after the stabbing. Petitioner fled the scene with his girlfriend but was caught shortly after with the assistance of a police canine who discovered Petitioner and his girlfriend hiding in a nearby garage. Petitioner was arrested and placed in a police car and transported to the police station. As Petitioner exited the police car, packets of heroin were discarded by Petitioner and retrieved by the police. Petitioner was found guilty of second-degree murder, also known as felony murder. The underlying felony was

robbery. Petitioner was given the mandatory sentence of life incarceration without parole for the second-degree murder charge.

## I. PROCEDURAL HISTORY

### A. State Court Procedural History

The procedural history is taken mostly from the Answer filed by Respondents. Petitioner's jury trial commenced on April 12, 2010, before Judge Mariani. Public Defender Robert L. Foreman represented Petitioner. The defense motion for judgment of acquittal as to first-degree murder was granted after the Commonwealth closed its case. On April 15, 2010, the jury found Petitioner guilty of second-degree murder and robbery involving serious bodily injury.

Petitioner elected to proceed immediately to sentencing and received the mandatory sentence of life incarceration without parole for the second-degree murder charge. A timely post-sentence motion was filed, which was denied on May 15, 2010. Petitioner, through Public Defender Victoria H. Vidt, filed a timely appeal to the Pennsylvania Superior Court, which was docketed at 913 WDA 2010. Petitioner raised a single issue for appeal.

> 1. WAS THE EVIDENCE INSUFFICIENT TO SUPPORT A CONVICTION FOR SECOND DEGREE MURDER BECAUSE THE HOMICIDE WAS NOT COMMITTED WHILE THE DEFENDANT/APPELLANT WAS ENGAGED IN THE COMMISSION OF A FELONY? MOREOVER, WAS THE ROBBERY CONVICTION NOT SUPPORTED BY SUFFICIENT EVIDENCE BASED UPON THESE FACTS.

ECF No, 16-1 at 39. The Superior Court affirmed the judgment of sentence in a Memorandum Opinion filed on June 6, 2011. ECF No. 16-2 at 1 - 4 (adopting the trial court's opinion as its own). Thereafter, Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was docketed at 332 WAL 2011. The Supreme Court denied the request for allowance of appeal on October 17, 2011.

On January 11, 2012, Petitioner filed a pro se Post-Conviction Relief Act ("PCRA")

Petition, raising the following claims:

> [1.] Trial Counsel was ineffective for failing to establish that even though 2 cell phones were found, that I owned both cell phones.
> [2.] Trial Counsel was ineffective for conceding that I committed a robbery in a felony murder case. There was no strategic reason designed to effect my vital interests in effectively presenting a defense. First degree murder was not involved in the case.

ECF No. 16-2 at 10.

Attorney Scott Coffey was appointed to represent Petitioner in the PCRA proceedings.

Attorney Coffey filed a Motion to Withdraw and Turner/Finley No Merit Letter on May 3, 2012.

ECF No. 16-2 at 16 - 30. Petitioner filed motions requesting to proceed pro se and for additional

time to file an amendment, listing other claims he wished to pursue. ECF No. 16-2 at 31 – 33.

The court granted Petitioner's motion for additional time to amend. Attorney Coffey filed a

Reaffirmation of No Merit Letter on May 22, 2012 opining on the new/proposed claims as being

meritless. ECF No. 16-3 at 1 – 5. On May 23, 2012, the PCRA trial court issued its Notice of

Intent to Dismiss the PCRA Petition, advising Petitioner he had twenty days to respond. ECF No.

16-3 at 6. Petitioner filed a response requesting that he be permitted to proceed pro se and for

additional time to file amendments. The PCRA trial court granted both requests.

On August 16, 2012, Petitioner filed, in effect an Amended PCRA Petition, contending

the decision in Miller v. Alabama, 567 U.S. 460 (2012), barring the automatic imposition of a

life sentence on juveniles without considering the individual characteristics of the juvenile,

applies to Petitioner's case, despite the fact that he was 24 years old at the time he committed the

crime. ECF No. 16-3 at 7 – 27. At that point, the PCRA trial court appointed Steven C.

Townsend, Esquire to represent Petitioner.

On December 20, 2012, Attorney Townsend filed a No Merit Letter concluding that there were no meritorious issues he could raise on Petitioner's behalf.  ECF No. 16-4 at 1 - 11. Attorney Townsend also filed a Petition to Withdraw as Counsel and a Supplement to the Previously Filed No Merit Letter.  ECF No. 16-4 at 12 – 32.

A proceeding was held before Judge Mariani on May 3, 2013; all parties were present. The majority of this brief proceeding was spent addressing Petitioner's desire to pursue a <u>Miller</u> claim, despite the fact that he was not a juvenile. At that time, the PCRA trial court instructed Petitioner to give counsel any and all additional documentation regarding his <u>Miller</u> claim and mental capacity.  ECF No. 16 at 4.

Attorney Townsend filed a Second Supplement to the No Merit Letter, on July 9, 2013. ECF No. 16-4 at 35 – 38.

On July 11, 2013, the parties appeared before Judge Mariani again. Attorney Townsend stated on the record that he received and reviewed Petitioner's hospital and school records that he found nothing in those records that would raise a meritorious PCRA issue. The PCRA trial court granted Attorney Townsend's request to withdraw as counsel and explained to Petitioner his appellate rights. ECF No. 16 at 4.  The PCRA trial court dismissed Petitioner's PCRA petition. ECF No. 16-5 at 2.

Petitioner filed an appeal to the Superior Court, which was docketed at 1251 WDA 2013. The PCRA trial court filed its Opinion on September 13, 2016.  ECF No. 16-5 at 1 – 6.  Despite raising several issues in his Concise Statement of Matters Complained of on Appeal, Petitioner only raised one claim in his pro se brief to the Superior Court:

> 1. Does Petitioner Johnathan J. Perez suffer from any mental health defect that should have been investigated and developed into evidence by trial counsel? Furthermore, does the extensive mental history that is documented throughout Appellants Petitioners [sic] life, including Impulse Control Disorder, ADHD

(Attention Deficit Hyperactivity Disorder) with a learning disability, Bi Polar Disorder, and Anxiety Disorders count as evidence of mental defects?  Moreover, should these several mental health defects been presented to the court and jury for their usage and application of evidence during deliberations and or instructional purposes?

ECF No. 16-5 at 18.

In a Memorandum Opinion filed on July 15, 2014, the Superior Court found that Petitioner raised entirely new claims on appeal.  The Superior Court specifically found that Petitioner, in his PCRA Petition, did not assert the ineffectiveness of trial counsel in failing to introduce evidence of his mental health at trial.  ECF No. 16-5 at 34.  Accordingly, the Superior Court concluded that the above issue was waived and affirmed the lower court's order denying the PCRA Petition.  Id. at 28 – 35.

Petitioner filed a pro se Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was docketed at 375 WAL 2014. The Supreme Court denied the request for allowance of appeal on November 18, 2014.  Id. at 38.

**B.  Federal Court Procedural History**

The Petition was formally filed in January, 2016, ECF No. 4, after Petitioner's in forma pauperis motion was granted.  The Petition set forth the following five Grounds for Relief:

> **GROUND ONE**.  Mr. Perez was never given a Grazier hearing, when [the PCRA trial] Judge decided to allow Mr. Perez to go pro se.

 ECF No. 4 at 6.

> **GROUND TWO**: Layered ineffectiveness (failure to investigate).

Id. at 8.

> **GROUND THREE:** Evidence was insufficient to support a conviction for 2nd degree homicide. (Direct appeal)

Id. at 9.

GROUND FOUR: The Commonwealth misstated key evidence during trial resulting in prosecutorial misconduct and the Honorable Court never corrected it, which denied due process and rendered an unreliable verdict, which is a product of an unconstitutional attempt to undermine the truth determining process.

Id. at 11.

GROUND FIVE: Ineffective assistant [sic] of counsel, failure to investigate. (Trial [and] Appellate counsel) and claim plain error [and] prosecutorial misdconduct….

Id. at 14.

Petitioner also filed a Motion for Appointment of Counsel, ECF No. 5, which was denied. ECF No. 8.

After requesting and being granted an extension of time, Respondents filed an Answer, denying that Petitioner was entitled to any relief. ECF No. 16. Respondents also caused the original state court trial record to be delivered to the Clerk of Court. Petitioner then filed a traverse. ECF No. 20.

All parties have consented to have the United States Magistrate Judge exercise plenary jurisdiction. ECF Nos. 11 and 15.

## II. APPLICATION OF THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA

provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of … clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Secondly, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

The United States Supreme Court has made clear that the AEDPA is a very difficult standard to meet. Specifically, the Court has explained the AEDPA as follows:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. See *Lockyer, supra,* at 75, 123 S.Ct. 1166.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. Cf. *Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443

U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 102–03 (2011).

The AEDPA also provides another ground for claiming relief, namely, where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III. DISCUSSION

The Court will address the alleged grounds for relief in an order that allows for the effective organization of this Opinion.

### A.  Ground Three Does Not Merit Federal Habeas Relief.

In Ground Three, Petitioner contends that the evidence was insufficient to support a conviction for second-degree homicide, which was raised in the direct appeal.  ECF No. 4 at 9.

Petitioner raised the sufficiency of the evidence in his direct appeal as the sole issue raised in the direct appeal.  Judge Mariani, in his post-trial Opinion, addressed this issue and found that the "evidence was sufficient to convict and this claim of error is without merit."  ECF No. 16-1 at 28.  The Superior Court affirmed on the basis of the trial court's opinion.  ECF No. 16-2 at 3.

Given that the procedural posture of this case is a Section 2254 habeas proceeding, the AEDPA standard applies and that standard impacts on the pertinent question before this Court. The pertinent question for a federal habeas court is not whether in its judgment the evidence was sufficient to support a finding that Petitioner was guilty.  Indeed, a federal habeas court may not

overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the United States Supreme Court standard for sufficiency of the evidence announced in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." <u>Id.</u> Indeed, for a federal habeas court reviewing a state court conviction, "the only question under <u>Jackson</u> is whether that finding [by the state courts of the evidence being sufficient] was so insupportable as to fall below the threshold of bare rationality." <u>Coleman v. Johnson</u>, 566 U.S. 650, 656 (2012).

> **1. Petitioner does not show that the state court decision was "contrary to" in the first sense of applying a wrong rule of law.**

As to Ground Three, Petitioner does not even argue that the state courts applied a wrong rule of law and, so fails to carry his burden to show that the state courts' adjudication of this claim was contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law. Indeed, we find that the state courts' legal test for the sufficiency of the evidence is not contrary to the United States Supreme Court test for the sufficiency of the evidence as announced in <u>Jackson</u>.

The state courts applied the standard of sufficiency as follows: "[w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. ECF No. 16-2 at 2. The standard from the United States Supreme Court for review of a claim concerning the sufficiency of the evidence as drawn from <u>Jackson v. Virginia</u>, 443 U.S. at 319 is

"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Merely quoting the test from <u>Jackson</u> is more than adequate to show that the test of sufficiency employed by the state courts in Petitioner's case was not contrary to <u>Jackson</u> in the first sense of "contrary to" under the AEDPA. <u>Eley v. Erickson</u>, 712 F.3d 837, 848 (3d Cir. 2013) ("We agree with the Superior Court's later conclusion on PCRA appeal that these rules do not contradict *Jackson. Id.* at 612 ('[T]he federal standard enunciated in *Jackson* is [not] any different from that employed in Pennsylvania when reviewing sufficiency of the evidence questions.')…. Thus, we hold that the Superior Court's adjudication of Eley's sufficiency of the evidence claim was not contrary to *Jackson*.").

> **2. Petitioner has not shown that the state court decision was "contrary to" in the second sense of a materially indistinguishable United States Supreme Court case.**

Petitioner has not carried his burden to show that the state courts' adjudication of his claim was "contrary to" any United States Supreme Court precedent in the second sense, i.e., that the state courts applied the correct rule of law but reached an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case.

> **3. Petitioner has not shown that the state courts unreasonably applied United States Supreme Court precedent on sufficiency of the evidence.**

Petitioner has also failed to show that the state courts unreasonably applied the standard from <u>Jackson</u>.

The state courts reasoned as follows in rejecting the sufficiency of the evidence claim:

> A review of the record reflects that Mr. Perez was involved in the perpetration of a robbery, an enumerated felony in 18 Pa.C.S.A. § 2502(d), when the killing of the victim occurred. The evidence in this case was sufficient to

support the verdict in this case. Based on the evidence presented at trial, the jury was free to believe that both Ms. Turnbull [i.e., Petitioner's girlfriend who testified as a witness for the Commonwealth] and the defendant were heroin addicts. The defendant and Ms. Turnbull contacted Mr. McGrady to obtain a brick of heroin from him. They falsely informed him that they had the money necessary to make the purchase. When Mr. McGrady arrived to make the sale and learned that the defendant and Ms. Turnbull did not have the money, an argument ensued. The defendant had already armed himself with a kitchen knife. During the course of the argument, the defendant wielded the kitchen knife and fatally stabbed Mr. McGrady three times. After Mr. McGrady had been incapacitated, the defendant took heroin from Mr. McGrady's pockets. The jury was free to believe that the defendant used force, namely deadly force, to take the heroin from Mr. McGrady. Possessing and wielding the kitchen knife alone is circumstantial evidence that the defendant threatened force to obtain the heroin. Using a knife to mortally stab Mr. McGrady in order to obtain the heroin is clearly sufficient to demonstrate that the defendant committed the theft by the use of force. The evidence was sufficient to convict and this claim is without merit.

ECF No. 16-1 at 27 – 28.

Petitioner does not explicitly argue that the foregoing is an unreasonable application of the Jackson standard. Instead, he argues that the evidence was insufficient to establish that he intended to rob the victim before he stabbed the victim and that under case law construing the felony murder statute, an intent to steal that is formed only after the victim is dead or only after the violence has been perpetrated cannot qualify as a felony murder. See ECF No. 20 at 12 (citing Commonwealth v. Legg, 417 A.2d 1152 (Pa. 1980)). This very argument was made by Petitioner to the Superior Court, ECF No. 16-1 at 53 – 56, and notwithstanding this argument, the Superior Court rejected the claim. ECF No. 16-2 at 1 – 4. State courts are in the best position to construe state law.

The reasoning quoted above, rejecting the sufficiency of evidence argument, implicitly rejected Petitioner's factual contention that the record solely supports a finding that he formed the intent to take the heroin only after stabbing the victim. As the state courts accurately noted, the evidence of Petitioner and his girlfriend lying to the victim that they had money to buy the

heroin, and the arming of Petitioner before the victim arrived constitutes sufficient circumstantial evidence to support an inference that Petitioner intended to steal the heroin from the victim before the victim even arrived on scene.

Simply put, Petitioner has failed to establish that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedents regarding the sufficiency of evidence. As such, Ground Three does not support federal habeas relief.

**B. Grounds One, Two, Four and Five Were Procedurally Defaulted.**

Respondents argue in the Answer that Grounds One, Two, Four and Five are procedurally defaulted. We agree.

**1. The doctrine of procedural default**

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes). The United States Court of Appeals for the Third Circuit has explained that the "doctrine of procedural default in effect

makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief." Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992). See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

There are two exceptions to the procedural default doctrine. The first exception is the "cause and prejudice" exception. The cause and prejudice exception provides that where a federal legal issue was not properly raised in the state courts and, therefore, procedurally defaulted, the federal habeas court may address the procedurally defaulted claim on the merits if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage …. This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted). In other words, to establish prejudice, the habeas petitioner "must show a reasonable probability that, but for the alleged violation of federal law, the outcome of his case would have been different." Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999). Accord Turner v. Curtin, 507 F. App'x. 587, 590 (6th Cir. 2012).

The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts, the United States Court of Appeals for the Third Circuit explained this exception as follows:

> [I]f the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

Werts, 228 F.2d at 193.

Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law. See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995) (requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Finally, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. See, e.g., Wainwright v. Sykes; McClain v. Deuth, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); Redeagle-Belgarde v. Wood, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999); McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278, at *3 n.3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

## 2. Ground One was procedurally defaulted and is meritless.

Petitioner argues that he was not given a <u>Grazier</u> hearing in the PCRA trial court before being required to proceed pro se. A <u>Grazier</u> hearing is required under state law to determine if the waiver of the state law right to counsel in the PCRA proceedings is being voluntarily and knowingly waived. <u>Commonwealth v. Grazier</u>, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one."). There are at least three flaws in Petitioner's argument as to Ground One.

First, as pointed out by the Respondents, this claim was never raised in the state courts and, therefore, procedurally defaulted. ECF No. 16 at 17.

Second, as Respondents also point out, Petitioner was not required to receive a <u>Grazier</u> hearing under state law, given that he had appointed counsel, in fact, Petitioner had two different appointed counsel in the PCRA trial court proceedings. After the filing of the no-merit letters by the two different attorneys, Petitioner was not "waiving" his right to have counsel, so as to trigger the requirement to hold a <u>Grazier</u> hearing, rather, his attorneys were properly being permitted to withdraw after a determination that Petitioner was no longer entitled to counsel, given the no-merit letters which the PCRA trial court agreed with. ECF No. 16 at 17 – 19. In other words, after the PCRA trial court granted PCRA counsels' motions to withdraw, Petitioner no longer had a state law right to counsel that needed to be waived.[1] <u>See</u> <u>also</u> <u>Com. v. Robinson</u>, 970 A.2d 455, 456 (Pa. Super. 2009) ("We hold that in any case where a defendant seeks self-

---

[1] To the extent that Petitioner filed pro se motions while represented by counsel, i.e., before PCRA counsel were granted leave to withdraw, Petitioner was not without counsel, and, therefore, he was not required to waive the right to counsel at that time.

representation in a PCRA proceeding and where counsel has not properly withdrawn, a hearing must be held."). Hence, Ground One is meritless.

Third, even if Ground One had any merit, Ground One is simply not cognizable in these federal habeas proceedings. In Ground One, Petitioner complains about the procedural impropriety of not conducting a <u>Grazier</u> hearing during the PCRA proceedings. However, errors during the course of the PCRA proceedings do not provide a basis for relief in federal habeas proceedings. <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir. 1998) ("The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation. . . . Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment.'"); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in collateral proceedings ... are not a proper basis for habeas relief from the original conviction."). Accordingly, Ground One is procedurally defaulted and does not afford a basis for the granting of a writ of habeas corpus for any of the three reasons cited.

### 3. Ground Two was procedurally defaulted.

In Ground Two, Petitioner claims "layered ineffectiveness (failure to investigate)." ECF No. 4 at 8. Petitioner asserts in support of this ground that:

> Defendent [sic] clearly has proof of a very long and documented history of mental health and developmental disorders, which would have been useful during trial. Also if trial counsel investigated correctly the cell phones in evidence would[']ve been proven who they belonged too [sic]. So the jury would[']ve had that information when they asked for it....

<u>Id.</u>

Upon review, the Court finds that Petitioner procedurally defaulted the claim of ineffectiveness for the alleged failure to investigate his mental health history. While Petitioner raises two claims of ineffectiveness, one relating to the alleged failure to investigate his mental health history and one relating to alleged failure to investigate the ownership of cell phones, Petitioner only raised one issue of ineffectiveness to the Superior Court in his pro se PCRA appellate brief, namely, the alleged ineffectiveness for failure to investigate his mental health history. However, Petitioner procedurally defaulted this particular claim of ineffectiveness for failing to investigate his mental health history because he failed to raise it in the PCRA petition and raised it for the first time on the PCRA appeal to the Superior Court.

Even though Petitioner raised this mental health history claim in his PCRA appeal to the Superior Court, the Superior Court refused to address the issue because this claim was only raised for the first time in the PCRA appeal to the Superior Court and had not been raised in the PCRA petition or any of Petitioner's amendments to the PCRA petition at the PCRA trial court level. The Superior Court ruled that this claim was waived for failure to raise it in the PCRA trial court and for raising it for the first time on the PCRA appeal. ECF No. 16-5 at 33 - 35. This state law rule of waiver is independent and adequate so as to qualify Petitioner's failure in state court, to abide by this state law procedural rule, as a procedural default for purposes of this federal habeas proceeding. See, e.g., Tai-Nan v. Wilson, 336 F. App'x 256, 260–61 (3d Cir. 2009) ("The Pennsylvania courts held that Tai-Nan waived his recusal claim by failing to raise it with the trial court. The courts grounded their decision in Pennsylvania Rule of Appellate Procedure 302(a), which codified a Pennsylvania rule that 'issues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Commonwealth v. Piper, 458 Pa. 307, 328 A.2d 845, 847 (1974). Federal courts will not rule on the merits of a habeas petitioner's

claims 'when a state court has found such claims to be procedurally defaulted pursuant to an independent and adequate state procedure rule unless the petitioner shows cause and prejudice for the default.'"); Thomas v. Sec., Pennsylvania Dept. of Corrections, 495 F. App'x 200, 206 (3d Cir. 2012) ("Wayne's ineffective assistance claim based on trial counsel's failure to present evidence that was promised during opening statements is procedurally defaulted because Wayne did not comply with the clear and unambiguous Pennsylvania rules that require each claim to be separately and explicitly asserted in the PCRA petition. See Pa. R. Crim. P. 902(B); Pa. R.App. P. 302(a).").

As to the second claim, which was raised in Ground Two, of layered ineffectiveness of counsel for failing to investigate the ownership of the cell phones, we address it below, when we address Ground Five as Petitioner repeats his claim of ineffectiveness for failing to investigate ownership of the cell phones in Ground Five.

### 4. Grounds Four and Five were procedurally defaulted.

Grounds Four and Five are related. In Ground Four, Petitioner contends that the Commonwealth misstated key evidence during the prosecution's closing argument, resulting in prosecutorial misconduct and that the trial court never corrected the misstatement of fact. ECF No. 4 at 11. Specifically, Petitioner contends that the prosecutor in his closing argument implied that Petitioner had stolen the victim's cell phone. Petitioner asserts that there was no evidence of the fact that Petitioner stole the victim's cell phone and that in fact, of the two cell phones at issue, one belonged to him and the other belonged to his girlfriend. Petitioner further contends that the trial court erred in failing to answer a question from the jury after they had started their deliberations as to who the cell phones belonged. The trial judge instructed the jury to rely on

their own recollection of the evidence. Petitioner contends that this was a due process error on the part of the trial court.

In Ground Five, Petitioner asserts that his trial counsel was ineffective or failing to investigate who owned the two cell phones and that his trial and appellate attorneys were ineffective for failing to raise the issue of the prosecutor misstating facts in his closing and failing to object to the trial court's response to the jury question concerning the two cell phones.

Respondents argue that Grounds Four and Five are procedurally defaulted. We agree.

Ground Four raises a claim of prosecutorial misconduct for misstating in the closing argument that one of the cell phones belonged to the victim and a claim that the trial court's response to the jury question about the ownership of the cell phones, to wit, that the jury was to rely on their collective memory of the evidence as to the ownership, violated fundamental fairness. Respondents assert that these claims were waived under state law because Petitioner failed to raise these claims in the state courts even though he raised in the PCRA petition the related claim of trial counsel's ineffectiveness for failing to investigate ownership of the cell phones. ECF No. 16 at 28 ("Petitioner did not raise this claim in state court. As such, it is unexhausted. It is also procedurally defaulted….").

We agree that Petitioner's failure to raise the issues of prosecutorial misconduct and of the trial court's response to the jury question at any point in the state court proceedings waived these two issues under state law and constituted a procedural default for federal habeas purposes. See, e.g., Godfrey v. Patrick, CIVA 05-1106, 2006 WL 3692598, at *5 (W.D. Pa. Dec. 12, 2006) ("because he denied the state courts a full and complete opportunity to address the two federal claims he raises now, by failing to raise the first federal claim in his appeal to the Superior Court and by failing to raise the second federal claim at all, he procedurally defaulted these claims.");

Tyson v. Beard, CIV.A. 06-290, 2013 WL 4547780, at *19 (E.D. Pa. Aug. 27, 2013) ("this claim is procedurally defaulted for failing to raise it at all in the state courts."). Accordingly Ground Four is procedurally defaulted.

As to Ground Five, concerning the claim that counsel was ineffective for failing to investigate the ownership of the cell phones found in the garage, Respondents point out that although this issue was raised in the PCRA petition, it was not raised on appeal to the Superior Court in the PCRA proceedings. ECF No. 16 at 23. Failure to raise an issue on appeal constitutes a waiver of the claim under state law and a procedural default for federal habeas purposes. See, e.g., Johnson v. Fisher, CV 13-4758, 2016 WL 5076123, at *7 (E.D. Pa. Sept. 20, 2016) ("the Magistrate Judge concluded each of these claims was procedurally defaulted because Johnson failed to raise any of them in his PCRA appeal, and the claims were therefore waived."), *certificate of appealability denied sub nom.* Johnson v. Superintendent Smithfield SCI, CV 16-3860, 2017 WL 4785952 (3d Cir. Jan. 9, 2017), *cert. denied sub nom.* Johnson v. Tice, 138 S. Ct. 352 (2017). Accordingly, Ground Four and Ground Five are procedurally defaulted.

### 5. Petitioner fails to show cause and prejudice.

Petitioner filed a traverse, ECF No. 20, in which he argues cause to excuse his procedural defaults. We find that Petitioner fails to carry his burden to establish cause and prejudice or a miscarriage of justice.

### a. There is no cause and prejudice for Ground Two.

In one of the two issues raised in Ground Two, Petitioner claims that all of his counsel were ineffective for failing to investigate and introduce evidence of his mental health history. However, Petitioner fails to explain how this mental health history was relevant to anything at

issue in his trial ultimately or how he was prejudiced by the failure to introduce such mental health history.

Although Petitioner was charged with homicide in general, which includes all degrees of homicide, Petitioner's trial counsel, after the close of the Commonwealth's case in chief, made an oral motion for judgment of acquittal as to first-degree murder, which was granted by the trial court. Notes of Testimony, 4/12 -15/2015, at pp. 243 – 44; at pp. 248 - 49. Under Pennsylvania law, mental health history may be relevant to a first-degree murder charge in that such mental health history can mitigate the element of malice or pre-meditation for first-degree murder and reduce the culpability to third-degree murder. Such mental health history is considered relevant to a "diminished capacity" defense to first-degree murder under Pennsylvania law. See, e.g., Commonwealth v. Russell, 938 A.2d 1082 (Pa. Super. 2007) ("The 'diminished capacity' defense is available only as a defense to first-degree murder and not to second-degree murder, which was the offense charged against Appellant. Likewise, it is not available as a defense for other 'specific intent' non-homicide offenses. Accordingly, Dr. Bernstein's report and testimony were not relevant to the issues being tried before the trial court, and, as such, the trial court did not abuse its discretion by precluding the jury from considering Dr. Bernstein's report or testimony.") (citations omitted). Accordingly, Petitioner's mental health history was not relevant to his second-degree murder conviction or to any other issue, once the first-degree murder charge was dismissed at the close of the prosecution's case in chief and, thus, it would not have been necessary for defense counsel in its case in chief to introduce any of Petitioner's mental health history.

Neither can Petitioner establish prejudice from the lack of mental health evidence as to sentencing, given that Petitioner was found guilty of second-degree murder or felony homicide,

which carries a mandatory sentence of life in prison under state law. In light of the foregoing, Petitioner simply cannot establish prejudice from the lack of mental health evidence being presented at trial.[2]

### b. There is no cause and prejudice as to Ground Five.

In Ground Five, Petitioner asserts that his trial counsel was ineffective or failing to investigate who owned the two cell phones and that his trial and appellate counsels were ineffective for failing to raise the issue of the prosecutor misstating facts in his closing and failing to object to the trial court's response to the jury question concerning the two cell phones.

The claim that trial counsel was ineffective for failing to investigate the ownership of the cell phones was in fact raised in the PCRA Petition and was actually addressed by the PCRA trial court. ECF No. 16-5 at 4 – 6. In fact, the PCRA trial court concluded that "it is clear from the record that the ownership of any cell phones found at the scene was irrelevant to the determination of Petitioner's guilt. Accordingly, trial counsel's failure to examine the ownership of the telephones can hardly be deemed ineffective assistance of counsel. Ownership of the cell phones had no bearing on the outcome of the case." Id. at 6.

The procedural default of this claim occurred when Petitioner, proceeding pro se, prosecuted his appeal to the Superior Court in the PCRA proceedings and failed to raise this issue in the appeal. Accordingly, there is no "cause" for the procedural default; Petitioner himself is personally responsible for the procedural default of this claim. See, e.g., Brown v. New Jersey State Parole Bd., CIV.A. 04-3964(FLW), 2006 WL 231830, at *4 (D.N.J. Jan. 30, 2006) ("To the extent that Petitioner was acting pro se when he failed to file a timely notice of

---

[2] In this regard, we note that no claim of Petitioner being insane at the time of the crime was raised nor was there any issue of Petitioner's competency at the time of trial raised. Nor are these issues raised herein.

appeal in the Appellate Division, his own ignorance is not "cause". Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard. In short, because Petitioner has failed to allege the existence of an external impediment which prevented him from filing a timely appeal from the parole decision, he has not established cause for his procedural default.") (citations omitted); White v. Carroll, 416 F. Supp. 2d 270, 281–82 (D. Del. 2006) ("Petitioner does not allege that some external factor prevented him from appealing the denial of his second Rule 61 motion. To the extent petitioner contends that he did not appeal some of these claims because it would have been 'futile,' futility of this type does not constitute cause excusing a procedural default. Additionally, because petitioner presented both Rule 61 motions pro se, ineffective assistance of counsel is not cause for the default. Finally, petitioner's lack of legal knowledge fails to constitute cause.) (citations omitted).

Contrary to the PCRA trial court's reasoning that the cell phones had no relevance to the proceedings, Petitioner contends that the "two cellphones [sic] used at trial were pivotal evidence pertaining to the robbery charge." ECF No. 20 at 3. Petitioner argues that the prosecutor made the cell phones a big issue in the trial when he asked rhetorically in the closing argument why was the victim's cell phone never found. The prosecutor went on to speculate that one of the two cell phones found in the garage was the one that belonged to the victim. Petitioner argues that the implication is that Petitioner stole the victim's cell phone and that this theft, as opposed to Petitioner's taking of the heroin from the victim, constituted the factual predicate of the robbery.

Petitioner's theory is simply not supported by the record. The opening statement of the prosecution put forward the Commonwealth's theory of the case very clearly, namely, that Petitioner committed a robbery of the victim in the taking from the victim the heroin. See Notes of Testimony, 4/12/2015, at p. 44, lines 10 -18 ("What Mr. Perez did was he grabbed from the

victim, as he lay dying, several stamped bags of heroin. He actually left a little bit of money as part of the robbery and ran off with Ms. Turnbull. He admitted to Detective Garlicki that he then proceeded to use the stamped bags of heroin that he took from the victim, because he wanted to get high."). Even the defense understood that Petitioner's taking of the heroin formed the basis for the robbery charge, as demonstrated by the defense counsel's opening statement when he argued that "I want you to be looking throughout the course of the trial for testimony to answer the question, 'Did he [i.e., Petitioner] do all of this as part of a plan to rob Jaquet McGrady of his drugs?'" Id. at 54, lines 9 – 14. See also id. at 235, lines 24 -25 – p. 236, lines 1 - 3 (Petitioner's trial counsel argued "I would suggest that the testimony presented – adduced testimony in this case showed that the theft of the property – that the heroin – occurred after the fight and after the victim was stabbed."); id at 238, lines 8 – 11 (the trial judge characterized the prosecution's argument as "Mr. Berquist argues that his evidence shows that the whole point of your client's inflicting of the injury was to take the heroin."). See also id. at 294, lines 10 – 14 (prosecutor's closing argument wherein he states: "Hold Johnathan Perez liable for what he did to Jacquet McGrady. He wanted Jacquet McGrady's drugs, and he stabbed him to death to get them. And he took them and ran away[.]").

Respondents correctly place in context the significance of the prosecution's statement about one of the cell phones belonging to the victim. ECF No. 16 at 29. Respondents note that the prosecution's statement about one of the cell phones belonging to the victim was in fair response to the defense counsel's closing argument that the victim's gun was never found because it was lost just like the victim's cell phone was never found because it too was lost. See N.T. at pp. 271 – 273 (closing argument of defense concerning victim's gun and cell phones).

The prosecution had implied that the victim's gun[3] was not found because the victim had no gun and that contrary to the defense theory that the victim's cell phone was lost (just like the defense contended the victim's gun was lost), in fact, one of the two cell phones found, had belonged to the victim. N.T. at 290 – 92.

In light of the foregoing, we find that Petitioner's Ground Five was procedurally defaulted and that Petitioner cannot demonstrate either cause for, or prejudice stemming from, the procedural default of Ground Five because Petitioner's factual contention as to the significance of the cell phone being the basis for his robbery conviction is not tenable in the face of this record.

### c.  There is no cause and prejudice as to Ground Four.

Lastly, we note that Petitioner did procedurally default Ground Four because he never raised the claim in the state courts.  It does not seem that Petitioner can establish "cause" for the procedural default of this claim when he never raised the claim himself even when he had the opportunity to do so either in his pro se PCRA Petitions or in his pro se appeal to the Superior Court in the PCRA proceedings.  However, even if Petitioner could show cause, the discussion above under the "cause and prejudice analysis of Ground Five" should make clear that Petitioner cannot establish prejudice from the failure to have argued prosecutorial misconduct or trial court error in response to the jury question as to who owned the cell phones in light of the record evidence.  As shown and held by the PCRA trial court, the cell phone ownership was not relevant to the robbery theory presented by the Commonwealth despite Petitioner's unsupported contention to the contrary.  Who owned the cell phone was not relevant to a finding of Petitioner

---

[3]  Apparently, the defense suggested that the victim had a gun so as to render reasonable Petitioner's fear of the victim and as a justification for Petitioner to use deadly force to defend himself.

guilty of second-degree murder in causing the death of the victim in the course of committing a robbery of the victim by intending to and, in fact, taking from the victim the heroin that Petitioner knew was on the person of the victim.

### 6. Petitioner fails to show a miscarriage of justice.

Petitioner points to no new evidence of his actual innocence. Accordingly, he fails to show a miscarriage of justice. <u>Tice v. Wilson</u>, 425 F. Supp. 2d 676, 681 (W.D. Pa. 2006), *aff'd*, 276 F. App'x. 125 (3d Cir. 2008) ("Under the 'miscarriage of justice' standard, a petitioner must present new evidence of innocence to persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

Hence, having procedurally defaulted all of his Grounds for Relief other than Ground Three, and having failed to show cause and prejudice or a miscarriage of justice, none of the procedurally defaulted grounds can provide a basis for relief in these federal habeas proceedings.

## IV. CERTIFICATE OF APPEALABILITY

Because we conclude that jurists of reason would not find the foregoing debatable, a Certificate of Appealability is denied.

## V. CONCLUSION

For the reasons set forth herein, the Petition is dismissed and a Certificate of Appealability is denied.

BY THE COURT:

Date:  January 25, 2018           s/Maureen P. Kelly
                                  MAUREEN P. KELLY
                                  CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     JOHNATHAN JAMES PEREZ
JM5282
10745 Route 18
Albion, PA 16475


All Counsel of record via CM-ECF